**Kenneth P. COFFEY, M.D., Plaintiff,**

**and**

**David High, Appellant,**

**v.**

**HEALTHTRUST, INC., a Delaware corporation, Edmond Memorial Hospital, Inc., an Oklahoma corporation, Joel A. Hart, McKinley D. Moore, James E. Dalton, Jr., Charles R. Brown, Larry K. Killebrew, M.D., individuals, Defendants–Appellees.**

**Kenneth P. COFFEY, M.D., Plaintiff–Appellant,**

**v.**

**HEALTHTRUST, INC., a Delaware corporation, Edmond Memorial Hospital, Inc., an Oklahoma corporation, Joel A. Hart, McKinley D. Moore, James E. Dalton, Jr., Charles R. Brown, Larry K. Killebrew, M.D., individuals, Defendants–Appellees.**

**Nos. 90–6322, 90–6323, 90–6418.**

United States Court of Appeals, Tenth Circuit.

Feb. 5, 1992.

William J. Skepnek of Stevens, Brand, Lungstrum, Golden & Winter, Lawrence, Kan. (William R. Burkett and Steven L. Tolson of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, Okl., with him on the briefs), for appellant David High.

John T. Schmidt of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Okl. (C. Kevin Morrison, Washington, D.C.; Steven L. Tolson, Oklahoma City, Okl., William J. Skepnek of Stevens, Brand, Lungstrum, Golden & Winter, Lawrence, Kan., and David High of Tomerlin, High & High, Oklahoma City, Okl., with him on the briefs), for plaintiff-appellant Kenneth P. Coffey, M.D.

George F. Short of Short, Barnes, Wiggins, Margo & Adler, Oklahoma City, Okl., and Douglas J. Colton of Verner, Liipfert, Bernhard, McPherson & Hand, Chartered, Washington, D.C. (Cynthia L. Sparling and Kevin Driskill of Short, Barnes, Wiggins, Margo & Adler, Oklahoma City, Okl., Glen D. Huff, Susan A. Short and Darrell W. Downs of Foliart, Huff, Ottaway & Caldwell, Oklahoma City, Okl., Don C. Lewis of Verner, Liipfert, Bernhard, McPherson & Hand, Chartered, Washington, D.C., with them on the briefs), for defendants-appellees.

Before BALDOCK, SETH and EBEL, Circuit Judges.

SETH, Circuit Judge.

In these two appeals, consolidated for argument and for purposes of this opinion, we are asked to determine: first, whether an exclusive contract between a radiologist, defendant Larry Killebrew, and a hospital, defendant Edmond Memorial Hospital (EMH), together with the exclusion of

plaintiff, the former radiologist at EMH, violate Section 1 of the Sherman Act, 15 U.S.C. § 1; and second, whether Rule 11 sanctions were justified against one of Appellant's attorneys based on that attorney's submission of a motion to the court during the summary judgment proceedings. The district court granted the hospital's motion for summary judgment on the antitrust claim and granted the hospital's motion for Rule 11 sanctions against Appellant's attorney. For the reasons that follow we affirm the grant of summary judgment and reverse and remand the imposition of Rule 11 sanctions.

We consider the evidence in the summary judgment appeal in the light most favorable to the non-moving party, Appellant Kenneth Coffey. Dr. Coffey is a radiologist who practiced radiology at EMH until November 7, 1988. EMH is a 100–bed acute care hospital in Edmond, Oklahoma owned by Appellee Healthtrust, Inc. Edmond, Oklahoma is close to Oklahoma City.

Between 1972 and 1988, Coffey was associated with a group of radiologists, Diagnostic Radiology (DR), who provided exclusive radiology services to EMH. Although DR only had a written contract with EMH to provide such services between 1981 and 1984, after 1984, EMH administrators viewed their relationship with DR as if the contract terms continued. Defendant Larry Killebrew worked as a DR radiologist until 1984.

The events precipitating this lawsuit began in May 1988 when DR began to expand the services available at its outpatient clinic. The purpose of the DR expansion was to attract HMO (health maintenance organization) and PPO (preferred provider organization) clients. For the first time, DR offered C.T. Scanning, mammography and ultrasound, all services formerly available only to inpatients at EMH. Although DR stated several times that it was not seeking to compete for EMH patients, EMH viewed DR as a direct competitor. Appellee Joel Hart, EMH's CEO and chief administrator, informed DR that the hospital's Board of Trustees opposed the expansion. Hart stated that he felt DR's actions were dis-

loyal to the hospital and placed DR radiologists in a conflict of interest with EMH. The concern was that income generated from use of EMH facilities was being invested in a facility in direct competition with EMH.

In an attempt to eliminate the differences between the EMH and DR, Appellee James Dalton, Healthtrust's regional director, attempted to negotiate a joint venture with DR. DR rejected the proposal and EMH ended its exclusive relationship with DR.

In November 1988, EMH and Appellee Killebrew entered into an exclusive contract to provide radiology services. Under the terms of the agreement DR radiologists including Dr. Coffey retained their staff privileges but were not allowed to perform the "official" reading of x-rays taken with hospital equipment and personnel. In a memorandum sent to EMH staff physicians, EMH administrator Hart described the procedure for obtaining x-rays under the new agreement as follows:

> "If you desire to have any x-rays interpreted by any other radiologist, such interpretation will be in addition to the required interpretation by Drs. Killebrew and Idstron and will require an order by you on the chart for a radiology consult.
>
> . . . .
>
> "If you desire that a procedure be performed upon an inpatient by another radiologist of your choice, it will be necessary for you to discharge the patient and have them transferred at their expense to a facility where the radiologist of your choice can perform such a procedure."

Following EMH's decision to terminate its exclusive relationship with DR, Dr. Coffey determined that DR would not bring in sufficient income to sustain the partnership. He left DR and associated with another radiology group. Coffey stated in his deposition that he had suffered a two-thirds reduction in his personal income. A few months later he filed this antitrust lawsuit alleging violations of Section 1 of the Sherman Act and various pendant state law claims.

Both parties filed motions for summary judgment. The district court granted the defendants' motion on the federal antitrust claims and dismissed the state law claims without prejudice to Dr. Coffey's refiling of those claims in an Oklahoma state court.

The facts relevant to the Rule 11 appeal arose during the summary judgment proceedings. After the deadline for filing briefs to the district court on defendant's summary judgment motion, one of Coffey's attorneys, David High, filed a pleading with the court titled "Newly Discovered Study Submitted by Plaintiff in Support of Expert Opinion on the Market Power of Edmond Memorial Hospital." Attached to the pleading was a Study by Health Care Investment Analysts, Inc. (HCIA) concluding that hospitals located in competitive markets had costs which were higher than hospitals in less competitive markets. Also attached was an affidavit of James Horrell, Coffey's expert, stating that the HCIA Study supported the proposition contained in his deposition testimony, submitted earlier to the court, that Edmond Memorial Hospital had market power in the Edmond market.

The defendants responded to High's pleading with a motion for Rule 11 sanctions. Their motion was based on affidavits from HCIA employees stating that they informed High before he filed the pleading that use of the Study to support antitrust market definitions would be misguided.

For purposes of the Study, HCIA classified suburban and urban hospitals in the same market if they were within five miles of each other. High and his expert Horrell adopted HCIA's five-mile figure into an antitrust context. In the pleading filed with the court, High stated "[f]rom their comprehensive data base, HCIA determined that in urban and suburban markets, hospitals which are not located within five (5) miles of each other occupy separate geographic markets."

After conducting an evidentiary hearing, the district court granted the motion for Rule 11 sanctions. The court's ruling was based in large part on its finding that, prior to filing the pleading, High was informed by the authors of the HCIA Study that the five-mile figure was not derived from any empirical sources and was not material to the market issues in the present case. The court also found that a person reading the Study could reach only one reasonable conclusion; namely, that the Study was not material to the market issue in the case. High was ordered to pay defendants $10,000 for costs and fees associated with the briefs prepared and the evidentiary hearing held on the Rule 11 matter.

### Summary Judgment

We review the district court's grant of summary judgment *de novo* applying the same legal standard used by the district court under Rule 56(c) of the Federal Rules of Civil Procedure. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238 (10th Cir.). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In an antitrust case, "[t]o survive a motion for summary judgment ... a plaintiff seeking damages for a violation of § 1 [of the Sherman Act] must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (quoting *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775).

■ Appellant's complaint alleges two violations of the Sherman Act, 15 U.S.C. § 1. Section 1 provides that "[e]very contract, combination ..., or conspiracy, in restraint of trade or commerce among the several States ..., is declared to be illegal." This language has been interpreted to prohibit restrictive practices which impose unreasonable restraints on competition. *See Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568). Coffey contends that the exclusive contract between Dr. Killebrew and EMH constituted a

group boycott which violated the Act and that the agreement illegally tied hospital services to Dr. Killebrew's radiology services, also a violation of the Act.

We begin with Dr. Coffey's "group boycott" argument. Throughout the district court proceedings, and again on this appeal, Dr. Coffey has argued that the contract between Dr. Killebrew and EMH was the basis of a broader conspiracy to exclude DR from the practice of radiology at EMH. The conspiracy, he claims, existed not only between the parties to the contract, but also among the members of the medical staff. When EMH issued its guidelines implementing its exclusive agreement with Dr. Killebrew, Dr. Coffey contends that the medical staff was unwillingly coerced into joining the conspiracy. He argues that the participation of the medical staff, the hospital and Dr. Killebrew is sufficient to establish a group boycott violative of Section 1. We disagree.

To prove that a conspiracy exists which violates Section 1 of the Sherman Act, Dr. Coffey must show either that the conspiracy results in an unreasonable restraint on competition (referred to as the rule of reason), or that the conduct falls into one of the categories of "per se" illegality. *See Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.*, 472 U.S. 284, 289, 105 S.Ct. 2613, 2616, 86 L.Ed.2d 202. Actions are found to be *per se* illegal when their "pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Northern Pacific Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545. Group boycotts are often considered *per se* illegal. *Northwest Wholesale*, 472 U.S. at 290, 105 S.Ct. at 2617.

In this circuit, to establish that a group boycott is *per se* illegal "there must be an agreement among conspirators whose market positions are horizontal to each other." *Westman Comm'n Co. v. Hobart Int'l, Inc.*, 796 F.2d 1216, 1224, n. 1

(10th Cir.), *accord Key Financial Planning Corp. v. ITT Life Ins. Corp.*, 828 F.2d 635 (10th Cir.). "While the competitors need not be at the same market level as the plaintiff, there must be concerted activity between two or more competitors at same market level." *Key*, 828 F.2d at 641.

Dr. Coffey argues that the horizontal requirement in *Westman* and *Key* is met because the members of the medical staff are "independent economic entities and are competitors with each other." As competing entities, he contends, the doctors' decision to follow the hospital's directive implementing its exclusive agreement with Dr. Killebrew formed the horizontal relationship necessary to make this a *per se* group boycott.

Dr. Coffey, however, produced no evidence of any type of agreement among the medical staff to exclude DR. In fact, in affidavits submitted to the district court on the summary judgment motion, fourteen EMH doctors stated that it was their agreement *with EMH*, not with other doctors on the EMH staff, that prevented them from sending their radiology referrals to DR. The language in each of the affidavits states:

"Since November 7, 1988, I would have preferred to refer my patients to the doctors of Diagnostic Radiology, including Dr. Kenneth P. Coffey, and would have done so but for my agreement with Edmond Memorial Hospital to make such referrals to Doctor Killebrew."

Dr. Coffey also states in his deposition that the "overwhelming majority" of EMH physicians did not like the hospital's decision to stop referring to DR. There is simply no evidence that the members of the medical staff in any way conspired to exclude DR.

From the facts submitted during the summary judgment proceedings, it is clear that Dr. Coffey failed to assert the type of relationship necessary to establish a group boycott. We find as a matter of law that the relationship among the physicians is insufficient to establish a *per se* group boycott. Any relationship which existed between the physicians and EMH and Dr. Killebrew and EMH is vertical.

Dr. Coffey correctly points out that the existence of a vertical relationship does not end our analysis under the Sherman Act, § 1. Instead, the focus shifts to the rule of reason. As we stated in *Key*, "[i]n order to satisfy the rule of reason, the plaintiff must prove that the termination had an adverse effect on competition." *Key* 828 F.2d at 642. Dr. Coffey asserts that he submitted "undisputed evidence" to the district court that the boycott had an actual detrimental effect on competition. Again, we must disagree.

From the evidence submitted to the district court, it is clear that what occurred after the implementation of the contract with Dr. Killebrew was only a reshuffling of competitors. This reshuffling had no detrimental effect on competition. Before EMH's contract with Dr. Killebrew, DR provided exclusive radiology services at the hospital. Although Dr. Coffey characterizes this relationship as "open", where patients could choose among radiologists, the evidence points to the fact that patients were effectively limited to radiologists working with DR.

After EMH entered into the contract with Dr. Killebrew, radiology services remained exclusive. Only the provider changed. Dr. Coffey introduced no evidence that competition was in any way limited by the switch in exclusive providers. Moreover, Dr. Coffey failed to introduce evidence defining a relevant geographic market impacted by EMH's alleged anticompetitive actions. Absent any market definition or showing that competition was impacted, Dr. Coffey's claim must fail under the rule of reason analysis.

We next address Dr. Coffey's tying argument. A preliminary, and in this case dispositive, question is whether Dr. Coffey waived his tying claim during summary judgment. In his brief filed in response to defendants' summary judgment motion, Dr. Coffey focused exclusively on the group boycott theory. He did not challenge or rebut the defendants' arguments on the tying claim.

On appeal, Dr. Coffey offers two reasons for this exclusion. First, he contends that the page limitation placed on his brief filed in the district court prevented him from addressing all the issues raised by the defendants who were not given a page limit. Second, Dr. Coffey argues that the court was well aware of his arguments regarding the tying claim which were fully presented to the court in response to defendants' Fed.R.Civ.P. 12(b)(6) motion.

Neither of these explanations is sufficient. It is well established that:

"Once a party moving for summary judgment has met his initial burden, the party resisting the motion cannot rest on his pleadings. *Security National Bank v. Belleville Livestock Commission*, 619 F.2d 840, 848 (10th Cir.1979). *See also, Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir.1983) ('[a] party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such issues on appeal.')."

*Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1325 (10th Cir.). We hold that Dr. Coffey's failure to rebut the arguments raised by defendants in their motion for summary judgment is fatal to his attempt to raise and rebut such arguments on this appeal.

### Rule 11 Sanctions

We review the district court's Rule 11 determination under an abuse of discretion standard. *Eisenberg v. University of New Mexico*, 936 F.2d 1131 (10th Cir.). The abuse of discretion standard applies to all aspects of the district court's determination. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359.

Under Rule 11, the person who signs a pleading, motion or other paper filed with the court, certifies that he or she has conducted a reasonable inquiry into the factual and legal basis for the filing, and that the substance of the filing is well-grounded in fact and law. Fed.R.Civ.P. 11. Although the district court applies an objective standard to Rule 11 determinations, *see Adam-*

*son v. Bowen*, 855 F.2d 668, 673 (10th Cir.), the court's inquiry is "rooted in factual determinations." *Cooter & Gell*, 110 S.Ct. at 2459. "In considering whether a complaint was supported by fact and law 'to the best of the signer's knowledge, information, and belief,' a court must make some assessment of the signer's credibility." *Id.* (quoting Rule 11).

■ In the present case, High does not dispute the application of Rule 11 to the pleading filed. The document at issue is a signed supplemental pleading. As such, it constitutes "other paper" as that term is used in the Rule. High also concedes that part of the district court's Rule 11 analysis required some inquiry into his knowledge prior to the filing of the pleading. High's argument is that the district court abused its discretion by basing its Rule 11 analysis and eventual sanction on whether High was telling the truth in subsequent pleadings filed in response to defendants' motion for sanctions.

In their motion requesting Rule 11 sanctions against High, defendants relied on affidavits of the HCIA President, George Pillari, and Managing Director, Stephen Renn. Both stated that they informed High before he filed the supplemental pleading that use of the report for antitrust market definition would be "misguided" because the five-mile figure was determined arbitrarily without use of rigorous empirical data. High responded with his own affidavit which stated that "Stephen Renn and George Pillari never informed me that an attempt by me to use the report of HCIA to support an antitrust market would be misguided."

Thus, the Rule 11 motion, as pled to the court, considered the discrepancy between these two affidavits to be the primary basis for Rule 11 sanctions. This resulted in a sanction based in large part on the court's finding that High did not tell the truth during the Rule 11 proceedings rather than a finding that a reasonable attorney would not have filed the original document in question. The Rule 11 proceeding was in effect transformed into a disciplinary action.

Nowhere is this more apparent than in the language used by the district court at the end of the evidentiary hearing. The court separately addressed the validity of the pleading and the discrepancy in the affidavits. It stated:

"Now, because of the procedural posture, of course, I'm looking at the—I'm looking at the motion of the Plaintiff presenting that study and the affidavit of Doctor Horrell, that's where the Rule Eleven violation is alleged to have occurred. *That's not very serious considering the conflict between the affidavits of the HCIA witnesses and Mr. High. Now, that's what's serious.* If somebody misrepresented a situation to the Court in an affidavit, that is big medicine. And that's what I'm going to be concentrating on in reviewing the rest of the evidence."

(Emphasis added.) The fact that the court considered the conflicts in the affidavits to be more serious than the pleadings which formed the basis of the Rule 11 action is evidence in itself that the court exceeded the proper scope of Rule 11.

The conclusion that the district court exceeded Rule 11 is further supported by the language used in the sanction orders. In its initial order granting sanctions the court stated that it was reprimanding High for "knowingly filing a pleading that is misleading and a study that is inapposite after being told that it was by the people at HCIA who know best." After High filed a petition for rehearing, the court was more direct. It stated "[i]n its prior Order, the Court sought to put its finding gently. In view of the instant motion, the time has come to be more blunt.... The finding: HCIA witnesses told the truth when they said that they told High his proffered exhibit could not be legitimately proffered for the purpose he proposed. Mr. High did not tell the truth when he denied this."

Given the emphasis placed on the finding that High was not telling the truth, we are unable to determine whether the sanction issued was the result of a violation of Rule 11 or the court's finding on High's truthfulness.

As a result, we are unable to determine whether the sanction issued was the result of a violation of Rule 11 or the court's finding that High did not tell the truth. They may be remotely related but the mixture is obviously in need of separation. Under these circumstances we must remand the case for a Rule 11 proceeding which focuses on the actual pleading filed.

We recognize that disciplinary sanctions with Rule 11 sanctions can in some unusual circumstances be justified under other statutes, rules of civil procedure or the district court's inherent power. *See, e.g., Chambers v. NASCO,* — U.S. —, 111 S.Ct. 2123, 115 L.Ed.2d 27; *Braley v. Campbell,* 832 F.2d 1504, 1510 (10th Cir.). The trial court's statements and the record at the hearing make it impossible to determine whether or not the Rule 11 hearing became instead a disciplinary hearing.

Accordingly, the decision of the district court for the Western District of Oklahoma granting the defendants' motion for summary judgment is AFFIRMED; the decision of the district court granting Rule 11 sanctions is REVERSED and REMANDED for conformance with this opinion.