986 F.2d 1426
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 John CASILLAN, Plaintiff-Appellant,
v.
REGIONAL TRANSPORTATION DISTRICT AMALGAMATED TRANSIT UNION,
LOCAL 1001; Michael Garcia; Richard Bauman; Robert
Garside; Ed Rhatican; Pete Perea; Bernie Snyder; George
Stanko; and Gregg Fisher, Defendants-Appellees.
 Nos. 92-1009, 92-1039.
 United States Court of Appeals, Tenth Circuit.
 Jan. 15, 1993.
 
 Before McKAY, SETH and JOHN P. MOORE, Circuit Judges
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(e); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff John Casillan appeals the district court's dismissal of his civil rights complaint against the Regional Transportation District (RTD), Amalgamated Transit Union (ATU), and various named individual defendants. In a separate case, plaintiff's counsel also appeals the imposition of sanctions against him. We combine both cases for disposition and affirm.
 
 
 3
 This case arises out of a series of work-related conflicts between plaintiff, three of his four co-workers and defendant Stanko, which resulted in plaintiff's termination for refusal to undergo psychiatric evaluation. Plaintiff is a United States citizen of Hispanic/Filipino origin. He was employed as a facilities maintenance technician by defendant RTD for fifteen years, spanning from November 24, 1974, until his termination on November 10, 1989. At the time of his termination, plaintiff and his co-workers were supervised by defendant Stanko.
 
 
 4
 The ongoing tension between plaintiff and three co-workers, which included a fist fight between plaintiff and a co-worker in 1987, and an alleged attempt by plaintiff to run over another co-worker with a golf cart on September 12, 1989, are extensively documented in an arbitrator's decision made a part of the record before us. Because of the golf cart incident, plaintiff was suspended for two days and issued disciplinary notices for conduct unbecoming an employee and use or threat of force. According to defendant Stanko, when plaintiff was suspended, plaintiff made inappropriate comments about Mr. Stanko's health and threatened to have him fired. Plaintiff subsequently asked for a medical pass and did not return to work until October 16, 1989.[1]
 
 
 5
 Between October 16 and 19, plaintiff allegedly threatened to "get" one of his co-workers, accused defendant Stanko of setting him up, and attempted to frighten another co-worker by driving his van toward the man. On October 19, 1989, the three co-workers told defendant Stanko they were unwilling to work with plaintiff because they were afraid for their own safety, given plaintiff's hostile actions and their on-the-job exposure to high voltage. Defendant Stanko sent the men back to work and contacted defendant Fisher, the senior labor relations representative.
 
 
 6
 After meeting with plaintiff, defendant Stanko, plaintiff's co-workers, and others, defendant Fisher asked plaintiff to undergo a psychiatric evaluation. Plaintiff refused. Mr. Fisher then sent plaintiff home on paid sick leave pending psychiatric evaluation and threatened to terminate plaintiff's sick leave benefits if plaintiff failed to undergo evaluation.
 
 
 7
 Plaintiff's sick leave benefits expired on October 24 but were extended through November 10 by defendant Fisher, who again asked plaintiff to reconsider psychiatric evaluation. On November 6, plaintiff filed a national origin discrimination complaint with the EEOC, alleging he had been falsely accused (by defendant Stanko) of attempting to run down a co-worker in a golf cart.[2]
 
 
 8
 On November 8, defendant Fisher informed plaintiff he would be terminated if he continued to refuse evaluation. Plaintiff was terminated on November 10 due to "continuing voluntary unavailability for work" and given full benefits and pay through that date.
 
 
 9
 Because plaintiff was a member of defendant ATU and his employment was governed by a collective bargaining agreement between ATU and RTD, plaintiff first challenged his termination in a grievance/arbitration proceeding in which he was represented by defendant ATU. At the July 1990 arbitration hearing, plaintiff testified at length about the harassment he allegedly had experienced at the hands of his co-workers. Plaintiff claimed his co-workers instigated the various encounters and conflicts at issue. Plaintiff also accused defendant Stanko of singling him out for less desirable jobs. Finally, plaintiff testified he had filed EEOC charges on a number of occasions.
 
 
 10
 In response, RTD contended it had the right to require plaintiff to undergo psychiatric evaluation under the Management Rights and Sick Leave provisions of the Collective Bargaining Agreement. RTD also introduced evidence about its past practice of requiring medical or psychiatric evaluations where warranted, noting that defendant ATU (which at that time represented plaintiff) could select a second doctor if it disagreed with the results of the initial psychiatric exam. In the alternative, RTD suggested plaintiff could be evaluated under the Employee Assistance Program, a program for employees who represent less of an immediate threat.
 
 
 11
 The arbitrator concluded plaintiff's termination differed "dramatically" from a normal discharge case in two important respects. First, plaintiff's "termination" in effect constituted an indefinite suspension because RTD had agreed to put plaintiff back to work at the facility of his choice if plaintiff agreed to a psychiatric evaluation and the results were favorable. Second, RTD had a contractual right to require plaintiff to undergo "medical examination" (including psychiatric evaluation, which the arbitrator found indistinguishable from physical examination) based on the provisions of the collective bargaining agreement and past practice. The arbitrator determined RTD had a reasonable basis for requiring the evaluation, given the number of complaints against plaintiff and RTD's need to take action to solve the obvious problems between plaintiff and his co-workers. Finding he could "only commend" RTD for the manner in which it handled plaintiff's case, the arbitrator ordered ATU and RTD to establish an "appropriate method" for psychiatric evaluation.
 
 
 12
 Despite the arbitrator's findings, plaintiff never submitted to psychiatric evaluation. Instead, on September 27, 1990, plaintiff filed the instant action against RTD, ATU, and several individual defendants,[3] alleging violation of his civil rights under 42 U.S.C. §§ 1981 and 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000; § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185; and the First, Fourth, Fifth, Ninth, and Fourteenth Amendments. On December 10, 1991, after more than a year of procedural skirmishes and two ineffectual amendments to plaintiff's original complaint, the district court granted defendants' Fed.R.Civ.P. 12(b)(6) motions to dismiss plaintiff's complaint for failure to state claims upon which relief could be granted.
 
 
 13
 Plaintiff argues that under Lessman v. McCormick, 591 F.2d 605, 611 (10th Cir.1979) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)), "and the legal authorities cited therein," he is not required to "set out in detail the facts upon which he bases his claim." To the contrary, plaintiff maintains his "short and plain" statement of claims gave defendants fair notice of the basis for charges against them, thus satisfying Lessman 's loose pleading requirements. Plaintiff argues the district court erred in concluding otherwise or, alternatively, in not giving him the opportunity to amend the complaint again under Fed.R.Civ.P. 15(a).
 
 
 14
 The sufficiency of a complaint is a question of law which this court reviews de novo, applying "the same scrutiny" as the trial court. Ayala v. Joy Mfg. Co., 877 F.2d 846, 847 (10th Cir.1989) (quoting Morgan v. City of Rawlins, 792 F.2d 975, 978 (10th Cir.1986) (citations omitted)). Thus, in considering whether the district court erred in dismissing plaintiff's complaint, "[a]ll well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir.1984) (citation omitted) (emphasis added). Dismissal is proper "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1115 (10th Cir.1991) (citation omitted).
 
 
 15
 Plaintiff's reliance upon Lessman is misplaced because the case is distinguishable in two important respects. First, though the complaint in Lessman failed to allege plaintiff "was unlawfully deprived of her money or property," the complaint did state specific facts supporting a claim of false arrest and false imprisonment under color of state law. Lessman, 591 F.2d at 609. Second, Lessman's false imprisonment claim, which asserted a violation of the constitutional right to be free from bodily restraint, is a recognized § 1983 cause of action.
 
 
 16
 In contrast, Mr. Casillan's complaint is devoid of any facts from which this court could surmise that a constitutionally protected liberty or property right was violated. Based upon plaintiff's refusal to submit to psychiatric examination, the complaint identifies only the "reasonable expectation of privacy with respect to his own thoughts and mental processes" as a constitutional predicate for his action.
 
 
 17
 Plaintiff has cited no cases in which such a right is recognized, especially where an employment agreement specifically grants an employer the right to request such an examination. Here, the contract governing plaintiff's employment explicitly stated, "the Employer [RTD] reserves the right to request that the employee submit to an examination by a medical doctor of the Employer's choosing and at the Employer's expense."
 
 
 18
 Plaintiff's complaint, moreover, is full of unsubstantiated, generalized factual allegations which do not give defendants any notice of the grounds upon which plaintiff's claims are based. The most glaring example is plaintiff's repeated charge that defendant ATU "aided, abetted and participated in" the deprivation of his constitutional rights. Nowhere does the complaint state what specific actions defendant ATU supposedly took to deprive plaintiff of constitutionally protected rights. Only in plaintiff's appeal brief do we discover that defendant ATU allegedly "failed to adequately represent him in the grievance and arbitration process." This contention was not raised in the district court. In short, plaintiff has confused vague conclusory generalizations for the statement of facts necessary to state a claim.
 
 
 19
 As the district court noted in its comprehensive, well-reasoned order dismissing plaintiff's complaint, all the claims contained in the complaint are disposable due to their legal inadequacy. For instance, plaintiff's § 1983 claim fails to satisfy either of the statute's two elements because the complaint does not explain how defendants acted under color of law or which of plaintiff's constitutionally protected rights were violated. Because the elements of a conspiracy claim under § 1983 are the same as those for a regular § 1983 claim, Norton v. Liddel, 620 F.2d 1375, 1378-79 (10th Cir.1980), plaintiff's § 1983 conspiracy claim is plagued by the same problems. Plaintiff's § 1981 claim is without merit because § 1981 does not apply to the kind of on-the-job deprivation which plaintiff alleges.[4] Plaintiff's Title VII claim also fails because plaintiff alleges no facts to support a causal connection between his EEOC claims and his termination or retaliatory motives on the part of named defendants. Finally, plaintiff's privacy, property, and liberty claims under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments are not actionable because the complaint fails to state specific constitutional rights which were violated or factual support for those claims. The one right enumerated by plaintiff, the "reasonable expectation of privacy with respect to his own thoughts and mental processes," is not of constitutional import.[5]
 
 
 20
 Thus, although "[t]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim,"[6] clearly the presumption is not without limits. As we stated in Bryan v. Stillwater Bd. of Realtors, 578 F.2d 1319, 1321 (10th Cir.1977) (citations omitted), "allegations of conclusions or of opinions are not sufficient when no facts are alleged by way of the statement of the claim."
 
 
 21
 Plaintiff had three opportunities to file a complaint containing facts sufficient to support his claims. Each of his amended complaint, however, was virtually identical to the original complaint--devoid of sufficient facts and overly replete with conclusory allegations. Under Fed.R.Civ.P. 15(a), plaintiff was entitled to amend his complaint "once as a matter of course." The district court generously allowed plaintiff to amend a second time, but plaintiff failed to take advantage of the opportunity to tighten his legal arguments or present facts supporting his claims. Allowing plaintiff to amend yet again would serve no legitimate purpose.
 
 
 22
 Plaintiff claims the district court's failure to lift a stay of discovery[7] before dismissing his complaint deprived him of "the opportunity to determine through the discovery process whether the evidence existed to establish a conspiracy." To support his argument, plaintiff again cites Lessman, 591 F.2d at 611, this time for the proposition that "parties should not be thrown out of court before being given an opportunity through ... [discovery] to ascertain whether the linkage they think may exist actually does."
 
 
 23
 As a general rule, "[d]iscovery rulings are within the broad discretion of the trial court." Willner v. Budig, 848 F.2d 1032, 1035-36 (10th Cir.1988), cert. denied, 488 U.S. 1031 (1989) (citation omitted); Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir.1990) (citation omitted). "[A] trial court's decision [on discovery matters] will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." United States v. Ortiz, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986).
 
 
 24
 Plaintiff's conspiracy claim fails to state the specific conspiratorial actions allegedly taken by defendants or the particular constitutional rights allegedly violated by those actions. Indeed, in the same conclusory fashion which plagues the entire complaint, paragraph 1 merely alleges defendants "have engaged in a conspiracy with each other and with unknown third persons for the purpose of depriving, either directly or indirectly, the Plaintiff of his rights...." Paragraph 2 proceeds along a similarly vague course, only stating that "[o]ne or more persons engaged in the conspiracy did, or caused to be done, an act or acts in furtherance of the object of such conspiracy [i.e., plaintiff's termination], whereby the Plaintiff was injured in his person or property." Plaintiff does not assert what act or acts were committed or by whom, nor does he assert which constitutional rights were violated as a consequence of concerted action.[8]
 
 
 25
 Plaintiff's reliance on Lessman for the "right" to discovery is misplaced for two reasons. First, Lessman involved conspiracy charges under § 1985, not § 1983. Arguably, Lessman 's observation regarding the need for discovery in conspiracy cases[9] is confined to § 1985 conspiracy claims, given that statute's stringent intent/motive requirement. Second, Lessman does not mandate discovery whenever a plaintiff alleges conspiracy. Indeed, in Lessman we affirmed the dismissal of the plaintiff's conspiracy claim, finding the plaintiff failed to show she was "the object of a class-based invidiously discriminatory animus." Id. at 608.
 
 
 26
 Thus, although plaintiff claims he should have been allowed to conduct discovery and proceed with his conspiracy claim, he was not entitled to discovery as a matter of law before the district court ruled on defendants' motions to dismiss. One need only examine plaintiff's fact-less complaint to understand the uselessness of further discovery. The district court's dismissal of plaintiff's complaint without discovery was entirely appropriate.
 
 
 27
 These conclusions render moot the remaining issues raised in Case No. 92-1009. We have, nonetheless, reviewed those issues and find them frivolous. Disqualification of ATU's counsel was not required because counsel had no previous attorney-client relationship with plaintiff. Smith v. Whatcott, 757 F.2d 1098, 1100 (10th Cir.1985); Peterson v. Kennedy, 771 F.2d 1244, 1258 (9th Cir.1985), cert. denied, 475 U.S. 1122 (1986). The district court did not err by dismissing the complaint without ruling on plaintiff's motions for reconsideration. The first motion was filed notwithstanding the court had ruled in plaintiff's favor.[10] Plaintiff's second motion to reconsider stated the magistrate "was without legal authority" to impose sanctions because under Local Rule 602 C of the United States District Court for the District of Colorado only the district court could do so. The second motion also challenged the granting of defendant RTD's motion for protective order on the grounds that RTD "failed to meet its initial burden" of proving its personnel files were privileged and plaintiff was denied the opportunity to demonstrate the relevancy of the files to his claims. Plaintiff's third motion to reconsider challenged the district court's April 5, 1991 order striking his Rule 56(f) affidavit because he should have been allowed to respond to defendants' motions for summary judgment/dismissal under Rule 56(e) and file a Rule 56(f) affidavit. Plaintiff's arguments in support of his contentions on these rulings are frivolous.
 
 
 28
 Plaintiff argues the district court erred in adopting the order of the magistrate judge granting defendant RTD's motion for protective order and imposed sanctions against plaintiff's counsel for filing an "unwarranted and frivolous" motion to reconsider. The sanctioned motion is the first motion previously discussed in which plaintiff contended the magistrate judge's order was clearly erroneous and contrary to law, even though the magistrate judge ruled in plaintiff's favor. In the order awarding attorney fees, the magistrate judge noted that fees were justified on two grounds: "Not only did the court rule in plaintiff's favor because it agreed with plaintiff that defendant failed to attach supporting documentation, but plaintiff has failed to cite any authority in support of his assertion that the court abused its discretion." On appeal, plaintiff again maintains the magistrate judge's order imposing fees was clearly erroneous and contrary to law and the district court erred in reinstating fees without ever ruling on the merits of plaintiff's motion for reconsideration.
 
 
 29
 In a joint answer brief, defendants argue that there was no factual basis for plaintiff's motion to reconsider. Rather, "[i]f plaintiff's counsel had reasonably investigated, he would have read the August 30, 1991 order and found it to be in his favor." Moreover, "if he had reasonably investigated the law, he would not have found any authority in support of his positions in the motion."
 
 
 30
 The standard of review for sanctions or award of attorney fees is whether the district court abused its discretion. Coffey v. Healthtrust, Inc., 955 F.2d 1388, 1393 (10th Cir.1992) (citations omitted); Smith v. Freeman, 921 F.2d 1120, 1122 (10th Cir.1990) (citations omitted). Although the parties consume a significant amount of energy arguing over the propriety of sanctions, the record indicates no Federal Rule of Civil Procedure 11 sanctions were ordered. Rather, the magistrate judge's November 29, 1991 order imposing "sanctions ... for the attorney fees required by defendants to respond to plaintiff's Motion for Reconsideration" in reality was nothing more than a mislabeled, though nonetheless justified, award of attorney fees under Local Rule 602 C. That rule expressly states: "[p]arties seeking or responding to a reconsideration of a magistrate's order should expect that attorney fees will be awarded to the prevailing party on such review" (emphasis added).[11] Thus, Local Rule 602 C clearly authorized the magistrate judge's "sanctions."[12]
 
 
 31
 There is, however, a legitimate sanctions issue before this court. Defendant RTD asks this court to "award RTD costs and attorney fees pursuant to 42 U.S.C. § 1988, Fed.R.Civ.P. 11, Fed.R.Civ.P. 56(g), as well as such other and further relief this Court deems fair and equitable." The named defendants also ask for attorney fees and costs relating to the appeal.
 
 
 32
 Under Fed.R.App.P. 38, "just damages and single or double costs" may be awarded when "an appeal is frivolous." An appeal is frivolous "if the result is obvious or if the appellant's arguments wholly lack merit." Willner, 848 F.2d at 1036. In the instant case, there are a number of grounds on which to conclude plaintiff's arguments on appeal are frivolous and to impose sanctions.
 
 
 33
 It is difficult to believe that the many legal misrepresentations and unsubstantiated, conclusory allegations contained in plaintiff's pleadings are unintentional. A typical example is counsel's argument that 28 U.S.C. § 636(b)(1)(A) requires a district court to reconsider a magistrate judge's order despite the statute's plain statement that a district judge "may reconsider " such an order (emphasis added).
 
 
 34
 In addition, defendants present compelling arguments for sanctions. For instance, defendant ATU notes that "to this day" it "has no idea what it is alleged to have done." Similarly, the named defendants claim they were never given proper notice of the specific actions they allegedly took to deprive plaintiff of his constitutional rights.[13] In their joint answer, defendants maintain that if an appeal of sanctions "is itself frivolous, Rule 38 gives appellate courts ample authority to award expenses." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 407 (1990) (a case involving Rule 11 sanctions).
 
 
 35
 Defendants are entitled to some form of compensation for having been dragged so pointlessly through the courts for the past two years. This action has been groundless from the day of filing, and the agonies visited upon the defending parties and their counsel by plaintiff's attorney and his relentless aggressiveness cannot be allowed to go unanswered. Attorneys who confuse misguided zeal and the pursuit of unfounded legal theories for championing the cause of justice must recognize there is a price for their efforts. The cause of justice is not an invitation to batter blameless parties, nor is it a substitute for proper investigation and grounding of legal proceedings. When the lack of preparation rises to the level of marked indifference to or ignorance of the law, as it has in this case, justice demands compensation.
 
 
 36
 The judgment of the district court is AFFIRMED, and the case is remanded for a determination of reasonable attorney fees for each defendant for defending this appeal. Those fees shall be assessed against counsel for plaintiff, but not plaintiff. Braley v. Campbell, 832 F.2d 1504 (10th Cir.1987).
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 During his time off plaintiff maintains he filed complaints with the EEOC and Colorado Civil Rights Commission, alleging national origin discrimination. The existence and/or outcome of these complaints is unknown
 
 
 [2]
 Once again, the outcome of the EEOC complaint is unknown
 
 
 [3]
 In addition to defendants Stanko and Fisher, plaintiff sued six members of RTD management. With the exception of defendant Bauman, who was RTD acting general manager when plaintiff was terminated, it is unclear from plaintiff's complaint or the briefs submitted on appeal exactly what positions the other named defendants held or in what capacity they were acting when they allegedly violated plaintiff's civil rights
 
 
 [4]
 As the Supreme Court noted in Patterson v. McLean Credit Union, 491 U.S. 164, 177 (1989), "the right to make contracts [under § 1981] does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including ... imposition of discriminatory working conditions" or harassment by a supervisor. Nor does the right to enforce contracts "extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights." Id. at 177-78. Here, the arbitration hearing and instant case illustrate that no defendant has impaired plaintiff's "right of access to legal process."
 
 
 [5]
 "The constitutional right of privacy is not to be equated with the common law right recognized by state tort law.... [O]nly the most intimate phases of personal life have been held to be constitutionally protected." NcNally v. Pulitzer Publishing Co., 532 F.2d 69, 76 (8th Cir.), cert. denied, 429 U.S. 855 (1976) (citations omitted)
 
 
 [6]
 Morgan, 792 F.2d at 978 (quoting Auster Oil & Gas, Inc. v. Stream, 764 F.2d 381, 386 (5th Cir.1985))
 
 
 [7]
 Discovery was stayed on March 29, 1991, pending evidentiary hearing on and resolution of plaintiff's motion to disqualify defendant ATU's counsel
 
 
 [8]
 Moreover, any such claim could not lie against either RTD or ATU because the doctrine of respondeat superior does not apply to § 1983 claims. Monell v. Dept. of Social Servs., 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694
 
 
 [9]
 Specifically, Lessman, 591 F.2d at 611, stated that "[i]n many cases of conspiracy essential information can only be produced through discovery."
 
 
 [10]
 Specifically, plaintiff's counsel argued that the magistrate's order was clearly erroneous and contrary to law because it "deprived Plaintiff's counsel of the opportunity to expunge the record of false and defamatory statements" allegedly made by defendant RTD and its counsel
 
 
 [11]
 Though plaintiff asks this court to strike the attorney fee provision of Local Rule 602 C, he offers no persuasive reason why this court should do so
 
 
 [12]
 The magistrate judge's reference to the award as "sanctions" and later inaccurate references by the parties and district court to the award as "attorney fees and costs " may have contributed to the parties' confusion over this relatively uncomplicated matter
 
 
 [13]
 Having reviewed the pleadings, we too are puzzled over who some of the named defendants are or what role they may have played in terminating plaintiff