Vivien A. JOHNSON, Plaintiff,

v.

Robert McADOO, individually, and as County Assessor of Comanche County; Claude Mansel, Wayne Rowe and Frank Walker, as County Commissioners of Comanche County, Defendants.

No. CIV–92–1197–A.

United States District Court, W.D. Oklahoma.

Sept. 16, 1993.

Henry W Floyd, Nathan J. Gigger, Oklahoma City, OK, for plaintiff.

Keith B Aycock, Taylor C. Stein, Dist. Attorney's Office, Lawton, OK, Robert T. Goolsby, Don R. Manners, Oklahoma City, OK, for defendants.

## ORDER

ALLEY, District Judge.

This matter came before the Court on the Motion For Rule 11 Sanctions filed by defendants Robert McAdoo, Claude Mansel, Wayne Rowe and Frank Walker, seeking an imposition of sanctions, pursuant to Fed. R.Civ.P. 11, against Nathan J. Gigger and Henry W. Floyd, former counsel for plaintiff Vivien A. Johnson, in the above entitled and numbered cause. On June 11, 1993, the Court issued an Order ruling that the complaint filed by Gigger and Floyd on July 1, 1992, against McAdoo, Mansel, Rowe and Walker violated Rule 11, but reserving ruling on the nature of sanctions to impose until receipt of briefs by the parties addressing why Gigger and Floyd "should not pay defendants' attorneys' fees, $1,200 to the Court, and be reprimanded in a published opinion." *Johnson v. McAdoo*, No. CIV–92–1197–A, slip op. at 11 (W.D.Okla. June 11, 1993). Before the Court are the responsive briefs filed by the parties pursuant to the Court's June 11, 1993, Order.

### I.

On July 1, 1992, Gigger and Floyd filed a complaint in this Court on behalf of plaintiff, an African–American female, against McAdoo, Mansel, Rowe and Walker, alleging that plaintiff was unlawfully discharged from her employment at the Comanche County Assessor's office ("Assessor's office") for refusing to sign an agreement to extend her probationary employment.[1] Plaintiff's complaint alleged that white employees at the Assessor's office who performed the same duties were not required to sign such an agreement. She thus claimed a violation of her civil rights and the public policy of the state of Oklahoma, asserting her claim under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; the Civil Rights Act of 1871, 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Fourteenth Amendment to the United States Constitution; and pendent state laws of Oklahoma. Plaintiff's complaint sought, *inter alia*, the following relief: (1) compensatory damages in the amount of $1,000,000 against McAdoo individually; (2) punitive damages in the amount of $2,000,000

---

1. The underlying facts of this case are more fully set forth in the Court's Orders dated January 25, 1993, and April 8, 1993, granting summary judgment in favor of defendants. *See Johnson v. McAdoo*, No. CIV–92–1197–A, slip op., 1993 WL 461495 (W.D.Okla. Jan. 25, 1993); *Johnson v. McAdoo*, No. CIV–92–1197–A, slip op., 1993 WL 461499 (W.D.Okla. Apr. 8, 1993).

against McAdoo individually; (3) punitive damages in the amount of $2,000,000 against Mansel individually; (4) punitive damages in the amount of $2,000,000 against Rowe individually; (5) punitive damages in the amount of $2,000,000 against Walker individually; and (6) attorneys' fees and costs.

Motions for summary judgment were filed by Walker on November 19, 1992, and by Mansel and Rowe on December 2, 1992. Floyd filed responses thereto on December 21, 1992, and December 23, 1992, respectively. On January 25, 1993, the Court issued an Order granting summary judgment in favor of Mansel, Rowe and Walker in their individual and official capacities on all of the claims made against them by plaintiff.

On February 1, 1993, McAdoo filed a motion for summary judgment. Gigger and Floyd did not file a response to McAdoo's motion, but instead, on March 5, 1993, Floyd filed a motion to dismiss without prejudice. Thereafter, on March 8, 1993, McAdoo filed a motion for involuntary dismissal, requesting the Court to dismiss plaintiff's complaint due to plaintiff's failure to respond to his summary judgment motion. In addition, on March 18, 1993, McAdoo filed a brief in opposition to plaintiff's motion to dismiss without prejudice. On April 8, 1993, this Court issued an Order granting McAdoo's motion for summary judgment on all claims. The remaining motions were consequently rendered moot.

On May 6, 1993, plaintiff filed an application for an extension of time to file an appeal on the grounds that Gigger and Floyd were not representing her in her appeal, and that she needed additional time to find legal representation. That application was granted by the Court on May 24, 1993.

Defendants collectively filed a motion for sanctions pursuant to Rule 11 on April 23, 1993. On May 11, 1993, Floyd, on behalf of himself and Gigger, filed a brief in opposition to the motion for sanctions. The Court considered the positions of the parties and the relevant law, and on June 11, 1993, issued an Order ruling that Gigger and Floyd's filing of the complaint against Walker, Mansel, Rowe and McAdoo was in violation of Rule 11, and

that an imposition of sanctions against Floyd and Gigger is mandated.

## II.

Rule 11 provides that:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11. Thus, a signature on a pleading certifies to the Court that the party "has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well-grounded in both, and is acting without any improper motive." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 542, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 (1991); *accord Coffey v. Healthtrust, Inc.,* 955 F.2d 1388, 1393 (10th Cir.1992); *White v. General Motors Corp.,* 908 F.2d 675, 679 (10th Cir. 1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). If an attorney does not conduct the requisite "reasonable inquiry," sanctions are not only justified but must be imposed. *See* Fed.R.Civ.P. 11 (emphasis added) ("[i]f a pleading ... is signed in violation of [Rule 11], the court ... *shall* impose upon the person who signed it ... an appropriate sanction...."); *Marley v. Wright,* 137 F.R.D. 359, 367 (W.D.Okla.1991), *aff'd,* 968 F.2d 20 (10th Cir.1992).

■ Determining whether an attorney has violated Rule 11 involves a consideration of

three types of issues. First, "[t]he court must consider factual questions regarding the nature of the attorney's prefiling inquiry and the factual basis of the pleading or other paper." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399, 110 S.Ct. 2447, 2457, 110 L.Ed.2d 359 (1990). Second, "[l]egal issues are raised in considering whether a pleading is 'warranted by existing law or a good faith argument' for changing the law and whether the attorney's conduct violated Rule 11." *Id.* Finally, the trial court "must exercise its discretion to tailor an 'appropriate sanction.'" *Id.; see also Hughes v. City of Fort Collins, Colo.*, 926 F.2d 986, 989 (10th Cir. 1991).

■ The Court applies an objective standard in making Rule 11 determinations and considers whether a reasonable and competent attorney would believe in the merits of an argument. *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir.1991). An attorney's good faith belief in the merits of an argument is insufficient. *White*, 908 F.2d at 680. The attorney must actually present a colorable claim that is objectively reasonable under the circumstances. *Id.*

■ After reviewing the applicable standards for an imposition of sanctions pursuant to Rule 11, the Court concluded that Gigger and Floyd's filing of the complaint in this case violated Rule 11. The Court stressed that the ruling was entered with some reluctance because a frequent criticism of Rule 11 applications is that the Rule falls heaviest on civil rights cases; however, there are limits, and the Court found that this case is out of bounds by any measure.

In holding that an imposition of sanctions against Gigger and Floyd is mandated here, the Court noted that Gigger and Floyd filed a complaint in this Court against Walker, Rowe, Mansel and McAdoo in their individual and official capacities for alleged violations of 42 U.S.C. §§ 1981, 1983; 42 U.S.C. § 2000e *et seq.;* the Fourteenth Amendment; and pendent state laws of Oklahoma. The complaint sought two million dollars in punitive damages against each of these defendants in their individual capacities as well as one million dollars in compensatory damages against

McAdoo in his individual capacity. Nonetheless, counsel completely failed to present any factual or legal basis in support any of their claims against any of the defendants, in either their individual or official capacities. *See* Compl. at 1–4; *Johnson v. McAdoo,* No. CIV–92–1197–A, slip op., 1993 WL 461495 (W.D.Okla. Jan. 25, 1993) (granting summary judgment in favor of Rowe, Mansel and Walker); *Johnson v. McAdoo,* No. CIV–92–1197–A, slip op., 1993 WL 461499 (W.D.Okla. Apr. 8, 1993) (granting summary judgment in favor of McAdoo). The Court found that Floyd and Gigger's filing of the complaint in this Court under such circumstances constituted a violation of Rule 11.

As to Walker, the Court observed that the Western District of Oklahoma in two prior decisions involving the same counsel, the same defendants, and similar claims, granted summary judgment in favor of Walker on the grounds that Walker was not in office when other alleged civil rights violations occurred. *See Johnson v. McAdoo,* No. CIV–91–305–R, slip op. (W.D.Okla. Oct. 25, 1991); *Noland v. McAdoo,* No. CIV–91–306–B, slip op. (W.D.Okla. Oct. 29, 1991). Despite these explicit rulings, Floyd and Gigger filed a complaint in this Court against Walker, asserting an identical argument as in the above cases. Thus, the Court emphasized that "it is time for counsel to get the message."

With respect to the action against Mansel and Rowe, the Court noted that the Board of Commissioners of Comanche County have no retained authority to make the personnel decisions of the Assessor's office. McAdoo was the Comanche County official with final policy making authority regarding the hiring and firing of plaintiff. Floyd and Gigger filed the complaint against Mansel and Rowe in their individual and official capacities without any evidence of individual participation by these defendants in plaintiff's discharge. Accordingly, the Court found that counsels' prefiling factual and legal inquiry was insufficient to support a claim against Mansel and Rowe.

Moreover, the Court pointed out that a suit against the county commissioners in their official capacities is in reality a suit against the county. *See Kentucky v. Gra-*

*ham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985). Under Oklahoma law, a suit against a county is to be brought against the "Board of County Commissioners" of the county in question. Okla.Stat. tit. 19, § 4. If plaintiff's intention was to hold the county liable for the alleged misconduct of McAdoo as county assessor, counsels' legal inquiry was incomplete in failing to determine the proper legal entity against whom to file the complaint.

Finally, as to McAdoo, the Court noted that there had not been an opportunity to review counsels' specific factual allegations against McAdoo other than the conclusory allegations in plaintiff's complaint because counsel failed to even prepare a response to McAdoo's summary judgment motion. The Court stated that while counsel claimed that plaintiff's ill health prevented the presentation of such evidence, Rule 11 requires counsel to be aware of such evidence *prior to* filing the complaint. *See Business Guides,* 498 U.S. at 542, 111 S.Ct. at 929 (A signature on a pleading certifies the party "has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well-grounded in both...."); *accord Coffey,* 955 F.2d at 1393. The record here was devoid of any factual basis suggesting that an actionable violation by McAdoo did in fact occur. The Court therefore concluded that Floyd and Gigger's inquiry into the factual and legal basis of the claims was insufficient, and as such, is sanctionable.

The Court concluded that an imposition of sanctions is mandated, and noted that the Court will sanction counsel only to the extent necessary to deter future abuses. Accordingly, the Court ordered Floyd and Gigger to show cause why they should not pay defendants' attorneys' fees, $1,200 to the Court, and be reprimanded in a published opinion.

### III.

■ As the Court has ruled that an imposition of sanctions against Floyd and Gigger is mandated, the Court now faces the question of what specific sanctions to impose. In determining the appropriate Rule 11 sanction, the Court considers the purposes of such sanctions. "Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management." *White,* 908 F.2d at 683. The primary goal of Rule 11 sanctions, however, is deterrence. *Id.* Four factors guide the Court's discretion: (1) the reasonableness of the proposed sanction; (2) the minimum amount necessary to deter; (3) the offender's ability to pay; and (4) the offending party's history, experience and ability, and the severity of the violation. *Id.* at 684–85.

Defendants' original motion for sanctions requests the Court to impose sanctions in the amount of $20,747.00 in attorneys' fees and $3,528.05 in costs, representing the amounts expended in the defense of this action. Although Rule 11 specifically allows the award of attorneys' fees to the opposing party as an appropriate sanction, the award of fees " 'is but one of several methods of achieving the various goals of Rule 11.' " *Id.* at 683 (quoting *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988)). The Rule's mention of attorneys' fees does not create an entitlement to full compensation on the part of the opposing party every time a frivolous paper is filed. *Id.* "Thus, although the monetary sanction imposed would normally be limited to the reasonable attorney's fees and expenses the opposing parties incur, the court must also consider other factors in arriving at 'an appropriate sanction.' " *Id.* at 684 (quoting Fed.R.Civ.P. 11). The amount ultimately imposed should be the "least severe sanction adequate to deter and punish the plaintiff." *Id.* (citing *Doering,* 857 F.2d at 195–96; *Cabell v. Petty,* 810 F.2d 463, 466–67 (4th Cir.1987)).

■ Gigger urges the Court to find that due to his limited involvement in this case, the imposition of attorneys' fees, court costs and the publication of a written reprimand are not warranted and would not materially advance the purposes of Rule 11. He acknowledges that he did sign the offending complaint naming McAdoo, Mansel, Rowe and Walker as defendants, but points out that many of the subsequent filings in this

matter were filed solely by Floyd (although these subsequent filings were not the basis of the Court's Rule 11 Order). Gigger also notes his unblemished professional career, and his advocacy on behalf of those less fortunate, including civil rights litigants. He notes that much of his civil practice is on a contingency fee basis, and argues that to impose a large monetary sanction would inflict a substantial hardship. Gigger also maintains that he conducted a sufficient prefiling inquiry prior to filing the complaint, including interviewing plaintiff as well as other witnesses who were of the view that discrimination existed in Comanche County.

Initially, the Court notes that Gigger's arguments with respect to the correctness of granting sanctions here are of no consequence to this decision, as the Court has already expressly ruled that sanctions will be imposed here. *See Johnson v. McAdoo*, No. CIV–92–1197–A, slip op. at 11 (W.D.Okla. June 11, 1993). The Court is persuaded, however, by the arguments raised by Gigger as to the amount and type of sanctions that will be imposed. Accordingly, the Court rules that sanctions are hereby imposed against Gigger in the form of: (1) a written reprimand; and (2) a payment of $1,200 to the Court, for which Gigger and Floyd shall be jointly and severally liable. The Court is persuaded that these sanctions are reasonable and are the minimum amount necessary to deter Gigger from further inappropriate conduct. The Court is cognizant of Gigger's history of litigating the causes of those less fortunate, and does not view these sanctions as having a chilling effect on future civil rights litigation by Gigger. In addition, Gigger has presented no evidence that he is unable to comply with the monetary sanction imposed here.

As to Floyd, the Court notes that his responsive brief is almost entirely devoted to arguments that the Court's ruling that his filing of the complaint violated Rule 11 was improper. He persists in a theory that the commissioners are liable here because they had a duty to investigate and fairly to dispose of plaintiff's "claim" (presumably against the county), when on this record she apparently never made a claim, and has never filed a contention that she did so but that its disposition was constitutionally inadequate. In any event, the Court again emphasizes that the instant Order addresses the appropriate sanctions that will be imposed here, not the correctness of imposing those sanctions. *See id.* With regard to this issue, Floyd submits that the amount of attorneys' fees sought by defendants is excessive, not justified by the alleged work performed, and includes hours that could and should have been performed by a legal assistant or clerical help.

■ The Court rules that sanctions are hereby imposed against Floyd in the form of: (1) a written reprimand; (2) a payment of $1,200 to the Court, for which Gigger and Floyd shall be jointly and severally liable; and (3) payment of defendants' reasonable attorneys' fees and costs. As Floyd has not seized the opportunity to adequately address the reasonableness of the fees and costs claimed by defendants or his ability to pay those fees and costs, the Court reserves ruling upon the amount of attorneys' fees and costs that will be imposed against Floyd until receipt, not later than September 27, 1993, of a brief and supporting documentation by Floyd addressing the issue. Defendants are invited to file a response not later than October 4, 1993.

With respect to the sanctions imposed against Floyd, the Court emphasizes that these sanctions are reasonable under the circumstances and viewed by the Court as being the minimum necessary to deter future inappropriate filings by Floyd. Floyd has presented no evidence that he is unable to pay the $1,200 fine. In addition, he has failed to present any other facts that would indicate that the sanctions imposed here are inappropriate or excessive.

■ As it is appropriate to consider "other factors" such as the offending party's litigation history in determining an appropriate Rule 11, sanction, *see White v. General Motors Corp.*, 977 F.2d 499, 502 (10th Cir.1992) ("The offending party's litigation history is one factor which the court may consider in determining an appropriate Rule 11 sanction."); *Eisenberg v. University of N.M.*, 936 F.2d 1131, 1136 (10th Cir.1991), the Court

specifically notes that Floyd was admonished by United States District Court Judge Luther Bohanon in the *Noland, supra,* case; a case that Floyd now cites in support of his position that sanctions are inappropriate here. The Court is outraged by Floyd's attempt to rely upon the *Noland* case to suggest that the filing of the complaint in the case at bar was not frivolous simply because another plaintiff, Chris Noland, had likewise asserted civil rights violations against the same defendants. At the conclusion of the *Noland* non-jury trial, upon dismissing all of the plaintiff's Title VII claims, Judge Bohanon censured Floyd as follows:

> THE COURT: Mr. Floyd, I am ashamed, as a good a lawyer as you are, coming in here and spending the Court's time, your time, trying to make a case where it is so woefully wanton in truth than the facts in this case.
>
> I just can't imagine you as a lawyer trying to make a case with this Plaintiff. It is a shame that a lawyer will take on a case like this and try to make something out of it when you are bound to know that you don't have a case and never did have a case. It is not to your credit, nor is it to the credit of your profession to bring this kind of lawsuit into this Court as you have. You should take an inventory of your behavior in this case and resolve not to take up your time, not to take up the Court's time with such lousy, lousy cases.
>
> I think it is a shame, it really is, to try to make something out of nothing.

*Noland v. McAdoo,* No. CIV–91–306–B, Tr. of Trial (Oct. 26, 1992). It is obvious that Floyd has not "gotten the message" and perhaps an imposition of sanctions against him now will effect that purpose. The Court is persuaded that sanctions against Floyd as stated above is the minimum necessary to deter future misconduct by him in this Court, and will have the effect of advancing legitimate civil rights claims against the appropriate defendants, rather than chilling such claims.

Finally, the Court rules that plaintiff will not be held jointly and severally liable for any of the penalties imposed against Gigger and Floyd, as the degree of fault for the Rule 11 violations rests entirely with counsel.

This Order will be distributed to all judges in the district and to the Clerk of Court, so that it may be retrieved if Gigger or Floyd are again subject to sanctions in the Western District of Oklahoma.

It is so ordered.